**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) ) ) ) | |
| Plaintiff, ) | CASE NO. 1:13-cv-07948 |
| ) | |
| v. ) | Honorable Sara L. Ellis |
| ) ) | |
| JAMES C. YADGIR, ) ) | |
| Defendant. ) ) ) | |

**[PROPOSED] FINAL JUDGMENT AND CONSENT ORDER FOR PERMANENT**
**INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF**
**AGAINST DEFENDANT JAMES C. YADGIR**

# I.   INTRODUCTION

On November 5, 2013, Plaintiff Commodity Futures Trading Commission

("Commission" or "CFTC") filed a Complaint against Defendant James C. Yadgir ("Yadgir" or

"Defendant") seeking injunctive and other equitable relief, and civil penalties for the violation of

Section 4a(e) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 6a(e) (Supp. IV 2011).

## II.   CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant without a

trial on the merits or any further judicial proceedings, Defendant:

1.      Consents to the entry of this Final Judgment and Consent Order for Permanent

Injunction, Civil Monetary Penalty and Other Equitable Relief against Defendant James C.

Yadgir ("Consent Order");

2.     Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.     Acknowledges proper service upon him of the Summons and Complaint;

4.     Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5.     Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1 et seq. (2012);

6.     Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7.     Waives:

any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Commission Regulations, 17 C.F.R. §§ 148.1 et seq. (2013), relating to, or arising from, this action;

b.      any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

c.      any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

        d.      any and all rights of appeal from this action;

8.      Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant now or in the future resides outside the jurisdiction of this Court;

9.      Agrees that he will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10.      Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is

without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendant shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11.     Admits the allegations of the Complaint and the Findings of Fact and Conclusions of Law in this Consent Order. Defendant does not consent to the use of this Consent Order, or the Findings of Fact or Conclusions of Law therein, as the sole basis for any other proceeding brought by the Commission, other than a proceeding in bankruptcy relating to Defendant, or any proceeding to enforce the terms of this Consent Order. Solely with respect to any bankruptcy proceeding relating to Defendant or any proceeding to enforce this Consent Order, Defendant

3

agrees that the findings in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof;

12.     Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 37 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him whether inside or outside the United States; and

13.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Yadgir in any other proceeding.

## III.     FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the

entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and other

equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A. Findings of Fact**

### The Parties to This Consent Order

14.     Plaintiff United States Commodity Futures Trading Commission is an

independent federal regulatory agency charged by Congress with administering and enforcing

the Act, 7 U.S.C. §§ 1 et seq., and the Commission Regulations promulgated thereunder, 17

C.F.R. §§ 1.1 *et seq.*

15.     Defendant James C. Yadgir is a resident of Palatine, Illinois, and has been

registered with the Commission as a floor trader since 1993 and as a floor broker since 2007.

4

**The Facts**

16.     Chicago Mercantile Exchange ("CME") Rule 10102.E states that the net speculative position limit for live cattle futures contracts is 450 contracts long or short in the expiring contract as of the close of business on the first business day following the first Friday of the contract month.[1] Similarly, CME Rule 10202.E states that the net speculative position or net futures equivalent position limit for feeder cattle futures contracts in the spot month is 300 contracts long or short during the last ten days of trading. Any person desiring to own or control a position in excess of these speculative position limits was required to obtain from the CME a bona fide hedge exemption or other exemption pursuant to CME Rule 559. All CME Rules referenced herein were in effect at all times relevant to this action.

17.     Futures equivalent means an option contract which has been adjusted by the previous day's risk factor, or delta coefficient, for that option which has been calculated at the

close of trading, and published by the applicable exchange and made readily available to the news media and the general public.[2] Once adjusted, option contracts are treated as equivalent to futures contracts.

18. The CME is a registered entity as defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (Supp. IV 2011) and a designated contract market for trading live and feeder cattle futures contracts pursuant to Section 5 of the Act, 7 U.S.C. § 7 (Supp. IV 2011). The Commission approved CME's speculative position limit rules for live cattle and feeder cattle futures contracts prior to all times relevant to this action.

19. In 2009, Yadgir requested a spot month spread exemption position limit for live cattle futures contracts. This exemption was approved by CME's Market Regulation Department

---

[1] The contract month, also known as the spot month, is the specified month within which a futures contract matures.
[2] *See* Commission Regulations 150.1(f) and 16.01, 17 C.F.R. §§ 150.1(f) and 16.01 (2013).

5

("MRD") in 2009, which allowed Yadgir to carry up to 550 live cattle futures contracts long or short in the spot month, 100 contracts above the 450 contracts limit. This live cattle exemption was still valid during April 2011.

20.     On April 6, 2011, Yadgir held an open net position in April 2011 live cattle futures contracts that exceeded his spot month spread exemption position limit, violating CME's speculative position limit for live cattle futures contracts. The aggregate futures net position in Yadgir's two accounts at the close of business on that day totaled 620 contracts long, exceeding his 550 contracts long spot month spread exemption position limit by 70 contracts. The following day, Yadgir reduced his position below the 550 contract limit, and was back in compliance.

21.     Yadgir exceeded the speculative position limit by using two different accounts that were subject to aggregation pursuant to CME Rule 559.D, which required aggregation of

indirectly owns the positions or controls the trading of the positions."

22.     Yadgir has admitted that he "surpassed the spot month cattle limits" in violation of CME's speculative position limit for live cattle futures contracts on April 6, 2011.

23.     In May 2012, Yadgir again violated CME's speculative position limits, this time in feeder cattle futures contracts.

24.     Yadgir's aggregate futures equivalent net position in May 2012 feeder cattle futures contracts totaled 381.759 contracts short at the close of business on May 23, 2012, which was the day before the expiration of that contract. This exceeded CME's speculative position limit of 300 contracts in the last ten days of trading by 81.759 contracts.

6

25. Yadgir's aggregate futures equivalent net position in May 2012 feeder cattle futures contracts totaled 300.152 contracts short at the close of business on May 24, 2012, which was the expiration day of that contract. This exceeded CME's speculative position limit of 300 contracts in the last ten days of trading by .152 contracts.

26. Yadgir has admitted violating CME's speculative position limit for feeder cattle futures contracts for the trade dates May 23 and 24, 2012.

## B. Conclusions of Law

### Jurisdiction and Venue

27. This court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the

Commission may bring an action in the proper district court of the United States against such

person to enjoin such act or practice, or to enforce compliance with the Act, or any rule,

regulation or order thereunder.

28.     Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2012), because Defendant transacts business in this District and certain transactions,

acts, practices, and business in this action occurred, are occurring, and/or are about to occur

within this District.

### Speculative Position Limit Violations

29.     Section 4a(e) of the Act, 7 U.S.C. § 6a(e) (Supp. IV 2011), states, in part, the

following:

> [I]t shall be a violation of this Act for any person to violate any bylaw, rule,
> regulation, or resolution of any contract market, derivatives transaction execution

> facility, or other board of trade licensed, designated, or registered by the
> Commission or electronic trading facility with respect to a significant price
> discovery contract fixing limits on the amount of trading which may be done or
> positions which may be held by any person under contracts of sale of any
> commodity for future delivery or under options on such contracts or commodities,
> if such bylaw, rule, regulation, or resolution has been approved by the
> Commission or certified by a registered entity...

30.     By the conduct described in paragraphs 16-26 Defendant violated CME's

speculative position limit for live and feeder cattle futures contracts on April 6, 2011, and May

23 and 24, 2012. Accordingly, Defendant violated Section 4a(e) of the Act, 7 U.S.C. § 6a(e)

(Supp. IV 2011), cited above.

31.     The Commission approved CME's speculative position limits rules for live and

feeder cattle futures contracts prior to Yadgir's violations of these speculative position limits.

32.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that

the Defendant will continue to engage in the acts and practices alleged in the Complaint and in

similar acts and practices in violation of the Act

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

33.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c

of the Act, 7 U.S.C. § 13a-1 (2012), Defendant is permanently restrained, enjoined and

prohibited from directly or indirectly violating any bylaw, rule, regulation, or resolution of any

contract market, derivatives transaction execution facility, or other board of trade licensed,

designated, or registered by the Commission or electronic trading facility with respect to a

significant price discovery contract fixing limits on the amount of trading which may be done or

positions which may be held by any person under contracts of sale of any commodity for future

delivery or under options on such contracts or commodities, if such bylaw, rule, regulation, or

8

resolution has been approved by the Commission or certified by a registered entity, in violation

of Section 4a(e) of the Act, 7 U.S.C. § 6a(e) (2012).

## V.    CIVIL MONETARY PENALTY

### IT IS HEREBY FURTHER ORDERED THAT:

34.    Defendant shall pay a civil monetary penalty in the amount of one hundred thirty

thousand dollars ($130,000) (the "CMP Obligation"), plus post-judgment interest within ten (10)

days of the entry of this Consent Order.  Post-judgment interest shall accrue on the CMP

Obligation commencing on the date of entry of this Consent Order and shall be determined by

using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28

U.S.C. 1961 (2006).

35.    The Defendant shall pay his CMP Obligation by electronic funds transfer, U.S.

postal money order, certified check, bank cashier's check, or bank money order.  If payment is to

Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables – AMZ 340
> Email Box: 9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-5644

If payment by electronic transfer is chosen, Defendant shall contact Linda Zurhorst or her

successor at the address above to receive payment instructions and shall fully comply with those

instructions. Defendant shall accompany payment of the CMP Obligation with a cover letter that

identifies Defendant and the name and docket number of this proceeding. Defendant shall

simultaneously transmit copies of the cover letter and the form of payment to: (1) the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and (2) the Deputy Director, Division of Enforcement, Commodity Futures Trading Commission, 140 Broadway, 19th Floor, New York, NY 10005.

36.     Partial Satisfaction:  Any acceptance by the Commission of partial payment of Defendant's CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI.     MISCELLANEOUS PROVISIONS

37.     Notice:  All notices required to be given by any provision in this Consent Order shall be sent by certified mail, return receipt requested, as follows:

Notice to the Commission:

        Deputy Director, Division of Enforcement

Commodity Futures Trading Commission
Eastern Regional Office
140 Broadway, 19th Floor
New York, NY 10005

Michael R. Berlowitz, Division of Enforcement
Commodity Futures Trading Commission
Eastern Regional Office
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9759
(646) 746-9940 (fax)

Notice to Defendant:

Jeffry M. Henderson
Attorney for James C. Yadgir
Henderson & Lyman
175 W. Jackson Blvd., Suite 240
Chicago, Illinois 60604
(312) 986-6960
Jhenderson@henderson-lyman.com

All such notices to the Commission shall reference the name and docket number of this action.

10

38.     Change of Address/Phone:  Until such time as Yadgir satisfies in full his CMP Obligation as set forth in this Consent Order, Yadgir shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

39.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless it is:  (a) reduced to writing, (b) signed by all parties hereto, and (c) approved by order of this Court.

40.     Invalidation:  If any provision of this Consent Order or the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

41. Waiver: The failure of any party to this Consent Order at any time to require

performance of any provision of this Consent Order shall in no manner affect the right of such

party at a later time to enforce the same or any other provision of this Consent Order. No waiver

in one or more instances of the breach of any provision contained in this Consent Order shall be

deemed to be or construed as a further or continuing waiver of such breach or waiver of the

breach of any other provision of this Consent Order.

42. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this

action to ensure compliance with this Consent Order and for all other purposes related to this

action, including any motion by Yadgir to modify, or for relief from, the terms of this Consent

Order.

11

43. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Yadgir, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Yadgir.

44. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

45.     Yadgir understands that the terms of the Consent Order are enforceable through contempt proceedings and that, in any such proceedings he may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter

this Final Judgment and Consent Order for Permanent Injunction, Civil Monetary Penalty and

Other Equitable Relief Against Defendant James C. Yadgir.

**IT IS SO ORDERED** on this _23_ day of _April, 2014._

_____

Hon. Sara L. Ellis
**UNITED STATES DISTRICT JUDGE**

CONSENTED TO AND APPROVED BY:

By: _____
James C. Yadgir

Date: _____2-18-2014_____

By: _____
Manal Sultan, Deputy Director
David Acevedo, Chief Trial Attorney
Michael R. Berlowitz, Trial Attorney
(mberlowitz@cftc.gov)
Mark A. Picard, Trial Attorney
(mpicard@cftc.gov)
**Commodity Futures Trading Commission**
140 Broadway, 19th Fl.

Date: _____

Approved as to form:

Jerry M. Henderson
Attorney for James C. Yadgir
Henderson & Lyman
175 W. Jackson Blvd., Suite 240
Chicago, Illinois 60604
(312) 986-6960
Jhenderson@henderson-lyman.com

Date: 2/18/14

13